IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHARD D. SIBERT,                  )
                                    )
            Plaintiff,              )
                                    )
v.                                  )      Civil Action No. 3:14CV737–HEH
                                    )
WELLS FARGO BANK, N.A.,             )
                                    )
            Defendant.              )

## MEMORANDUM OPINION
### (Cross Motions for Summary Judgment)

This matter arises from the alleged wrongful foreclosure of Plaintiff Richard D.

Sibert's ("Sibert" or "Plaintiff") residential property by Wells Fargo Bank, N.A. ("Wells

Fargo"). Sibert, a Sergeant in the United States Army, alleges that the foreclosure

violated the Servicemembers' Civil Relief Act ("SCRA" or "Act"), which prohibits

foreclosure on a servicemember's property during a period of military service without a

court order. 50 U.S.C. Appx. § 533(c) (hereinafter, "SCRA § 533(c)")[1].

The parties filed cross-motions for summary judgment, through which Wells

Fargo raised the issues of judicial estoppel and standing. The Court heard oral argument

on the issue of judicial estoppel on June 23, 2015. Having determined that judicial

estoppel does not bar Plaintiff's SCRA claim, the issue became whether Plaintiff, in his

individual capacity, had standing to maintain the action due to his 2011 voluntary

---

[1] In 2015, the compilers of the U.S. Code transferred the SCRA from 50 U.S.C. Appx. § 500, *et seq.* to 50 U.S.C. § 3900, *et seq.* 50 U.S.C. Appx. § 533 is now located at 50 U.S.C. § 3953. To maintain consistency with the parties' briefs, this Court will continue to cite to the SCRA according to the former numbering.

Chapter 7 bankruptcy case. The Court stayed the matter pending the reopening of

Plaintiff's bankruptcy case to allow Sibert's trustee in bankruptcy the opportunity to

pursue or abandon the present cause of action. (ECF No. 68.) The trustee having been

substituted as the proper party in interest, the Court confirmed the existence of standing

and lifted the stay by Memorandum Order entered on March 4, 2016 (ECF No. 75).

The matter is again before the Court on the parties' cross-motions for summary

judgment (ECF Nos. 21, 28). The Court will dispense with oral argument as to remaining

issues raised in the parties' motions, as they have been adequately briefed, and oral

argument would not aid in the decisional process. *See* E.D. Va. Loc. Civ. R. 7(J). For

the reasons stated herein, the Court will grant Defendant's Motion for Summary

Judgment and deny Plaintiff's Motion for Summary Judgment.

## I.  Background

In reviewing cross-motions for summary judgment, the Court will consider each

motion separately on its own merits to determine if either party deserves judgment as a

matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations

omitted). In considering each motion, the Court will exercise great care to resolve any

factual disputes and "competing, rational inferences" in the light most favorable to the

opposing party. *Id.* (internal quotation marks and citation omitted).

At the outset, the Court notes that both Plaintiff's Brief in Support of his Motion

for Summary Judgment and his Brief in Opposition to Wells Fargo's Motion for

Summary Judgment fail to include specifically captioned sections listing all material facts

as to which he contends are undisputed or genuinely in dispute, respectively, as required

by E.D. Va. Loc. Civ. R. 56(B)[2] and consistent with Fed. R. Civ. P. 56(c)(1). Under the Local Rules, the Court may accept those facts identified by the movant as undisputed to be admitted, as well as assume admitted those facts not disputed by reference to record evidence. E.D. Va. Loc. Civ. R. 56(B). Despite Plaintiff's failure to set forth such designations, this Court has made a reasonable effort to search the record in an attempt to identify those facts that are genuinely in dispute and those that are undisputed. Where appropriate, however, the Court reserves the right to consider Wells Fargo's statement of the facts as undisputed, as permitted by the Local Rules and Fed. R. Civ. P. 56(e).

The Court has concluded that the following narrative represents the undisputed facts for the purpose of resolving the cross-motions for summary judgment:

Sibert entered the United States Navy on July 9, 2004. (Pl. Mem. in Supp. Mot. Summ. J., Ex. 2, ECF No. 21-2; Def. Mem. in Supp. Mot. Summ. J., Ex. A, Pl. Resp. to

---

[2] Local Rule 56(B) provides:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and *citing the parts of the record relied on to support the facts alleged to be in dispute*. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added). This practice is consistent with the 2011 amendments to the Federal Rules of Civil Procedure, which require the parties to support their factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c); *see also Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (discussing 2011 amendments to Rule 56), *aff'd* 474 F. App'x 167, 2012 U.S. Appx. LEXIS 12311 (4th Cir. June 18, 2012).

Req. for Admis. ¶ 7, ECF No. 29-1, at 3, 44.)  On May 15, 2008, while on active duty, Sibert obtained a loan in the amount of $174,650.00, secured by a Note and Deed of Trust, and purchased a residential property at 3706 Northwood Court, Virginia Beach, Virginia 23452.  (ECF No. 21-1; ECF No. 21-2; ECF No. 29-1 at 1–2, 44; ECF No. 29-2; ECF No. 29-3.)  Sibert was honorably discharged from the Navy on July 8, 2008.  (ECF No. 21-2.)

In March 2009, eight months after Plaintiff's discharge, Wells Fargo instructed its trustee to commence foreclosure proceedings on Sibert's home.  (ECF No. 21-3.)  In April 2009, Sibert re-entered the service by joining the United States Army, and presently remains on active duty.  (ECF No. 21 at 2.)  A foreclosure sale was held on May 13, 2009, at which Sibert's home was sold.  (ECF No. 21-4.)  On June 4, 2009, Sibert executed a "Move-Out Agreement," entitling him to $2,000.00 to assist with relocation efforts.  He also executed a W-9 Form in order to receive the relocation funds.  The 3706 Northwood Court property was thereafter conveyed to two individuals by deed, dated September 11, 2009.  (ECF No. 29-6.)  Subsequently, on October 27, 2009, Sibert executed a "Servicemembers Civil Relief Act Addendum to Move-Out Agreement." (ECF No. 29-1 at 43.)

On January 25, 2011, Sibert filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Virginia, Case No. 11-70302. (ECF No. 29-7.)  Sibert's bankruptcy petition and schedules do not list any claims or potential claims against Wells Fargo as an asset or otherwise.  (ECF No. 29-8.)  On May 9, 2011, Sibert received a complete discharge pursuant to 11 U.S.C. § 727.  (*Id.*)

Plaintiff filed suit on October 29, 2014. (Compl., ECF No. 1.) He filed a Motion

for Summary Judgment on March 4, 2015 with a Memorandum in Support thereof. (ECF

No. 21.) Wells Fargo filed a Memorandum in Opposition to Plaintiff's Motion for

Summary Judgment on March 17, 2015 (ECF No. 24), and then filed its Motion for

Summary Judgment with a Memorandum in Support thereof on April 2, 2015 (ECF Nos.

28, 29). Plaintiff responded to Wells Fargo's Motion for Summary Judgment on April 6,

2015 (ECF Nos. 30, 31), and Wells Fargo replied on April 9, 2015 (ECF No. 32).[3]

## II.   Standard of Review

The standard of review for cross motions for summary judgment is well-settled in

the Fourth Circuit.

> On cross-motions for summary judgment, a district court
> should "rule upon each party's motion separately and
> determine whether summary judgment is appropriate as to
> each under the [Federal Rule of Civil Procedure] 56
> standard." *Monumental Paving & Excavating, Inc. v. Pa.
> Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).
> Summary judgment is appropriate only if the record shows
> "there is no genuine issue as to any material fact and that the
> movant is entitled to judgment as a matter of law." Fed. R.
> Civ. Proc. 56(c).

*Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (alteration in

original).

The relevant inquiry in the summary judgment analysis is "whether the evidence

presents a sufficient disagreement to require submission to a [trier of fact] or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,*

---

[3] Plaintiff did not file a reply brief in support of his Motion for Summary Judgment.

*Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. LLC v. Wash. Sport Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in that party's favor. *Id.*

Furthermore, to defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another," or the "mere existence of a scintilla of evidence" concerning a material fact. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997) (citations omitted); *Anderson*, 477 U.S. at 252. Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995). "Thus, if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Id.* (quotation marks and citation omitted).

## III. Discussion

The overarching issue to be resolved by this Court is whether or not Plaintiff's home mortgage loan qualifies under SCRA § 533(a), such that Wells Fargo was prohibited by SCRA § 533(c) from foreclosing on Plaintiff's home without a court order. Plaintiff contends that the SCRA applies to his loan. Wells Fargo disagrees, arguing that the SCRA does not apply to his loan, and alternatively, that even if SCRA § 533(a) does apply, Plaintiff voluntarily waived his rights under the SCRA.[4]

### A. Application of the SCRA

SCRA § 533(c), in relevant part, renders invalid any "sale, foreclosure, or seizure of property for breach of an obligation described in subsection (a) . . . if made during . . . the period of the servicemember's military service except . . . upon a court order[.]" As is clear from the text of the statute, the protections of SCRA § 533(c) only apply if Plaintiff's mortgage qualifies under § 533(a), which reads:

> (a) Mortgage as security. This section applies only to an obligation on real or personal property owned by a servicemember that--
> (1) originated before the period of the servicemember's military service and for which the servicemember is still obligated; and
> (2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage.

50 U.S.C. Appx. § 533(a).

---

[4] Wells Fargo also initially argued that Plaintiff lacked standing and was judicially estopped from bringing this action. Both these arguments have been resolved, and need not be addressed again here. Mem. Order of March 4, 2016 (ECF No. 75) (granting substitution of the Bankruptcy Trustee as Plaintiff in this suit, thereby resolving the standing issue); Mem. Op. of June 26, 2015 (ECF No. 67) (determining that judicial estoppel does not bar Plaintiff's claim).

This case turns on the interpretation of the phrase "originated before the period of the servicemember's military service." 50 U.S.C. Appx. § 533(a)(1). According to the Definitions section of the SCRA, "[t]he term 'period of military service' means the period beginning on the date on which a servicemember enters military service and ending on the date on which the servicemember is released from military service or dies while in military service." 50 U.S.C. Appx. § 511(3).[5]

In this case, Plaintiff has two (2) distinct terms of military service. Sibert served in the U.S. Navy from July 9, 2004 until he was discharged on July 8, 2008. Sibert's second term of military service began when he joined the U.S. Army in April 2009 and continues to the present. Sibert's mortgage originated on May 15, 2008, during his first stint of military service. Wells Fargo foreclosed upon Sibert's home on May 13, 2009, during his second stint of military service. None of these facts are in dispute.

Sibert's position is that "the period of . . . service" referred to in SCRA §§ 533(a) and (c) means only the specific period of service for which the servicemember invokes the protections of the SCRA. Here, he is invoking the Act as it pertains only to his second period of service, during which Wells Fargo foreclosed upon his home. Sibert argues that because his loan originated prior to *that* period of service, he is entitled to the protections and remedies of the SCRA. In contrast, Wells Fargo argues that "the period of . . . service" described in § 533(a) covers any period of military service, and because Sibert's loan originated while he was serving in the military, the SCRA is inapplicable and the foreclosure was proper.

---

[5] Now found at 50 U.S.C. § 3911(3).

The parties' arguments raise a question of first impression. The Court has canvassed existing caselaw and has been unable to find any authority establishing precisely how multiple periods of service should be treated under the SCRA.[6] Lacking direct guidance, this Court turns cautiously to the task of interpreting the contested provision of the SCRA.

Courts generally construe the SCRA liberally to protect those in uniform. The U.S. Supreme Court has said that the Act should be read "with an eye friendly to those who dropped their affairs to answer their country's call." *Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948); *see also Gordon v. Pete's Auto. Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011). However, it has been noted that "the Act does not apply merely because such person is in military service, and is not to be invoked for a needless purpose, but is to be administered as an instrument to accomplish substantial justice." *Brown Serv. Ins. Co. v. King*, 247 Ala. 311, 314 (1945). Additionally, while keeping the Supreme Court's directive in mind, a court cannot ignore established canons of statutory construction in interpreting the Act. *See Whigham v. Chase Auto Fin. Corp.*, 826 F.Supp.2d 914, 918 (E.D. Va. 2011).

In construing a statute, a court must "begin with the language of the statute." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with

---

[6] In *Hall v. Springleaf Financial Services, Inc.*, the District Court for the Southern District of Mississippi was confronted with the same argument the Court faces here, in the context of SCRA § 527. 2015 WL 7175789, *3, n.5 (S.D. Miss. Nov. 13, 2015). However, that court avoided the question because it found that two separate periods of military service did not exist under the undisputed facts of that case. *Id.*

regard to the particular dispute in the case.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.* at 341; *see also Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993) ("[A] statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on the context.").

On its own, the language of SCRA §§ 533(a) and (c) is unclear on whether it contemplates multiple periods of military service.  However, the specific context of the language indicates that the statute does not apply to obligations incurred while one is in the military, because the underlying concern is the impact military service may have on a servicemember's income and status, uncontemplated at the time when they incurred the obligation.  This concern is exposed by the language of SCRA §§ 533(b), 527 and 532.

## 1. SCRA § 533(b)

SCRA § 533(b), sandwiched between the provisions at issue in this case, concerns actions "to enforce an obligation described in subsection (a)," and authorizes a court to stay enforcement proceedings or adjust the obligation "when the servicemember's ability to comply with the obligation is materially affected by military service." Section 533(c), under which Sibert seeks to recover, provides a remedy for instances where § 533(b) would have applied, but the foreclosing party bypassed the court and thereby robbed the servicemember of the ability to seek a stay or adjustment. Accordingly, § 533(a) must be interpreted in a manner that makes sense in light of both §§ 533(b) and (c), because "we do not . . . construe statutory phrases in isolation; we read statutes as a whole." *Ayes v.*

*U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (internal citations omitted).

Reading the qualifying language in § 533(a) to include an obligation that originated during prior military service would lead to illogical results under § 533(b), which requires a showing that military service has "materially affected" the servicemember's ability to comply with the obligation. For a person entering military service for the first time, the resulting change in income and lifestyle relative to when they incurred the obligation could materially affect their ability to maintain payments. Additionally, the limitations of military service and pay would not have been contemplated by the underwriter in assessing the then-civilian's ability to repay. The same is not true for someone like Sibert, who incurred an obligation while already in the military, became a civilian, and then re-joined the military. Rather than being disadvantaged by re-entering the service, someone like Sibert has the same ability to comply with the obligation as when it was first negotiated and incurred. Accordingly, the context provided by § 533(b) counsels against reading § 533(a) in the manner Sibert proposes.

## 2. SCRA §§ 527, 532

Two other provisions of the SCRA provide instructive context for interpreting § 533(a): § 527 ("Maximum rate of interest on debts incurred before military service") and § 532 ("Protection under installment contracts for purchase or lease"). Both sections bear identical qualifying language: their protections only apply to contracts, obligations, or liabilities that originate "before the servicemember enters military service." While this

11

differs slightly from the language in § 533(a), that difference is immaterial, as courts have interpreted this language and the language of § 533(a) together.

For example, in *Chas H. Jenkins & Co. v. Lewis*, the North Carolina Supreme Court was tasked with interpreting and applying SCRA[7] § 532. 259 N.C. 86 (1963). To do so, the court first examined the legislative history of the Act and compared the language of § 532 (protecting someone who enters an installment contract and then "enter[s] military service") with § 533 (providing protections for "obligations [that] originated prior to such person's period of military service"). Next, the *Jenkins* court looked to *Jim's Trailer Sales v. Shutok*, wherein the U.S. District Court for the District of Pennsylvania held that because the obligation at issue originated while the servicemember was in the service, the whole of the SCRA was inapplicable. *Jenkins*, 259 N.C. at 89 (citing 153 F.Supp. 274, 275 (W.D. Pa. 1957)). Finally, the North Carolina Supreme Court considered the purpose of the Act generally, as interpreted by the Arizona Supreme Court: "It was meant to protect the interests of those who were called to the defense of their country and who, for that reason, were unable to keep up the payments upon obligations which they had incurred previous to their being called into service." *Id.* (quoting *Twitchell v. Home Owners' Loan Corp.*, 59 Ariz. 22, 27 (1942)). Based on its review, the court held that the language of the SCRA supported the finding

---

[7] The *Jenkins* court was in fact interpreting the Soldiers and Sailors Civil Relief Act of 1940 ("SSCRA"), the predecessor to the modern SCRA. That being said, the relevant language did not change when the SSCRA was reenacted as the SCRA in 2003. SSCRA § 301 became SCRA § 532, and SSCRA § 302 became SCRA § 533. The language of both sections took on its current form in the 2008 amendment to the SCRA.

that "where a person *then in the military service*" makes a purchase or executes a security, the SCRA does not apply. *Id.* at 90.

### 3. Analysis

When examined in the full context of § 533 and the SCRA as a whole, a reading of § 533(a) indicates that the SCRA does not apply to obligations that originate while a servicemember is already in the military. Because it is undisputed that Sibert's mortgage originated while he was in the military, that obligation does not qualify under SCRA § 533(a). As a result, Sibert cannot claim the remedy provided in § 533(c).

This holding also comports with the overall purpose of the SCRA. The Act was designed to ensure that servicemembers do not suffer financial or other disadvantages as a result of entering the service, so that such persons would be able to "devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902; *Smith v. Fitch*, 25 Wash. 2d 619, 629 (1946); *Blazejowski v. Stadnicki*, 317 Mass. 352, 356 (1944); *Reynolds v. Haulcroft*, 205 Ark. 760, 762-63 (1943). The SCRA achieves this in § 533, among other sections, by shielding servicemembers whose income changes as a result of their being called to active duty, and who therefore can no longer keep up with obligations negotiated on the basis of prior levels of income. Such a change in income and lifestyle was not a factor in Sibert's case, as the mortgage at issue here originated while he was already in the service. Accordingly, he does not fall within the intended class of protected persons. Allowing Sibert's brief departure from the military to relieve him from the consequences of his obligation would neither serve the purpose of the Act nor accomplish substantial justice.

13

**B. Waiver**

Because the Court finds that the SCRA does not apply to Sibert's mortgage, it does not reach the issue of waiver.

## IV.   Conclusion

Based on its finding that Plaintiff's mortgage does not qualify for the protections of the SCRA, the Court will grant Defendant Wells Fargo's Motion for Summary Judgment (ECF No. 28) and deny Plaintiff's Motion for Summary Judgment (ECF No. 21).

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
Henry E. Hudson
United States District Judge

Date: May 4 2016
Richmond, Virginia

14